IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v. CASE NO.: 3:12-CR-28/RV

JOSEPH R. ROBSON, SR.

Defendant.

_______________________________/

**SENTENCING MEMORANDUM OF JOSEPH R. ROBSON, SR.**

## I. Introduction

Joseph Robson will be 73 years of age on November 11, 2013. He has no criminal history and served his country proudly rising from an enlisted man in the Navy in 1958 at age 18 and retired as a "Lieutenant Commander" in 1986, serving during the Vietnam War era. He has overcome a dysfunctional childhood with little or no parental supervision as a teenager, an alcoholic and abusive father and sibling, who was considerably older than Mr. Robson, and suffers from significant health problems. He has been married to Helen Robson for 49 years and has two grown children who have successful lives and careers. He has talents and concerns for others that gained Mr. Robson a highly respected and well-liked status in our community. Given his age, the likelihood of recidivism seems remote. (Discussed below). Albeit this is an extremely serious crime for which Mr. Robson accepts full responsibility, Mr. Robson humbly requests a variance or application of the §3553(a) factors that may warrant a sentence lower than the incarceration called for under the advisory Sentencing Guidelines of 324 to 405 months of

incarceration. He is also subject to a fifteen year minimum mandatory sentence on Count I and a five year minimum mandatory sentence on Count II. It is arguable that a 20 year minimum mandatory sentence in this case, especially in light of a man who has a very limited life expectancy, would be "sufficient, but not greater than necessary," to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a). [1]

Mr. Robson readily admits to the factual basis to which he pled. Personally, he is extremely confused as well as guilt ridden about his actions in this case. He is adamant and there is no evidence to suggest otherwise, that his "morbid curiosity" with child pornography did not begin until several years ago after being diagnosed with impotency, failing health and a host of psychosocial factors that resulted in what Mr. Robson describes as his unexplainable and pathetic behavior. Numerous extremely well respected members in our community have written character letters on his behalf, knowing full well he has been charged with "production of child pornography" and receipt and possession of child pornography.[2] The letters and Dr. John Bingham's report are attached as an exhibit and labeled below. Also, a letter by his primary care physician for more than ten years, Dr. Gary Gotthelf, a Board Certified Internal Medicine specialist for more than thirty years, describes his overall grim physical health condition is also attached. (EX. A)

Mr. Robson, immediately after his house was searched[3] and knowing he was facing minimum mandatory sentence and prior to his arrest by federal authorities, voluntarily presented himself to Dr. John Bingham, a well known forensic psychologist in Pensacola, for a psychosexual evaluation and risk assessment. He also began seeing Ms. Sam Taylor, L.M.H.C.,

---

1 See letter from primary physician Gary Gotthelf, M.D. attached (Exhibit A)

2 The individuals who wrote the letters were not all told the specifics of the production charge to protect the identity of the child involved; however, they are all well aware that he is accused of making or producing child pornography.

3 At the time of the search he had deleted the majority of illegal photographs relating to the possession and receipt charges; he had deleted all photographs relating to the production charge.

M.S., a certified sex therapist for sex offender therapy. However, after being released by this Court on Pretrial Release at the time he entered his plea, his therapy was interrupted when he was arrested by State of Florida authorities on August 14, 2012. He now is being held in the Santa Rosa County Jail having been charged with multiple state charges, one of which carries with it a minimum mandatory life sentence without the possibility of parole for 25 years. The State of Florida may not pursue charges depending on the sentence imposed in this case.

**Revocation of Federal Pretrial Release**

Counsel for Mr. Robson has obtained an Order from this Honorable Court revoking his Federal Pretrial Release, in which he was 100% compliant, in an attempt, in light of his first being arrested by federal authorities, for the federal court to arguably have "primary jurisdiction" in order that he will be placed in a Federal Bureau of Prisons facility where his medical and psychological needs will receive superior care. Albeit a state sentence has not been imposed, we would humbly ask this Court to immediately impose the Federal sentence and recommend to the Federal Bureau of Prisons that his Federal sentence be served in a state facility, if the state proceeds with its' prosecution.

**I. Law Supporting Variance or Downward Departure**

Counsel acknowledges the lack of need to inform this Court of its authority to depart from the recommended advisory guideline range of 324 to 405 months in this case. Hence, this area will be briefly addressed for not to do might be considered derelict as Mr. Robson's counsel. Mr. Robson presents in this memo facts, information and case law in support of his humble request for a below the advisory guideline sentence and/or a variance.

In *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) the Court emphasized the need for individualized sentencing, reiterating "the principle that 'the punishment should fit the

offender and not merely the crime.' " Id. *At 124,* quoting *Williams v. New York*, 337 U.S. 241, 247 (1949). In *U.S. v. Booker,* 543 U.S. 220 (2005), the Supreme Court held that the sentencing guidelines are advisory only, not mandatory.

The other factors set forth in 18 U.S.C. § 3553 (a) must also be considered in fashioning the appropriate sentence. These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the advisory guideline range; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense. *Booker*, 125 S.Ct. at 764; see *Gall v. U.S.*, 552 U.S. 38 (2007) ; *Kimbrough v. U.S.*, 552 U.S. 85 (2007).

*Pepper*, *Booker*, *Gall*, and *Kimbrough* have "empowered district courts, not appellate courts . . . . [and have] breathe[d] life into the authority of district court judges to engage in individualized sentencing." *U.S. v. Whitehead*, 532 F.3d 991 (9th Cir. 2008).

In *Nelson v. U.S.*, 129 S.Ct. 890 (2009) (per curiam), the Supreme Court held that the guidelines are "not to be presumed reasonable." *Nelson,* 129 S.Ct. at 891. Unlike courts of appeal, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita v. U.S.*, 551 U.S. 338 (2007). In *U.S. v. Williams*, 435 F.3d 1350 (11th Cir. 2006) the Eleventh Circuit stated "[A]fter *Booker*, the sentencing Guidelines

are advisory, and the sentencing court, in its own discretion, can move below the advisory Guidelines range without a motion for downward departure as long as the resulting sentence is reasonable." See also *U.S. v. Sachsenmaier*, 491 F.3d 680 (7th Cir. 2007) (post-*Rita*, 2007) ("The district courts must calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence.").

Courts have not excluded child pornography cases from the command of §3553 that sentences should not be longer than necessary to achieve the goals of sentencing. In *United States v. Grigg*, 442 F.3d 560, 564 (7th Cir. 2006), the court recognized that the PROTECT Act could not be read to exclude the holding in *United States v. Booker, supra.* In *United States v. Gray*, 453 F.3d 1323 (11th Cir. 2006) a sixty-four year old defendant had been convicted of downloading child pornography for more than five years. The defendant was sixty-four years old, and, *inter alia*, "had a history of health problems." *Gray* at 1324. The court approved a sentence of seventy-two months which was less than half the one hundred fifty-one months that [d]efined the bottom of the guidelines range. *Gray* at 1325. In *United States v. Halsema*, 180 Fed.Appx, 103, 104-105 (11th Cir. May 9, 2006), the mitigating circumstances were sufficient to justify a sentence of twenty-four months rather than the fifty-seven to seventy-one months recommended by the Guidelines. In *United States v. Wachowiak,* 412 F. Supp. 2d 958 (E.D. Wisc. February 3, 2006), a twenty-four year old music student convicted of child pornography charges received a seventy month sentence rather than the one hundred and twenty-one to one hundred and fifty-one months recommended by the Sentencing Guidelines based largely on his expression of remorse, an otherwise praiseworthy life, strength of character, and the broad support of family and friends. Defendant acknowledges that the PROTECT Act sought to cut

back the grounds for departures in sex and child porn cases. However, those cut backs are now merely advisory under *Booker's* remedial opinion. In fact, circuit and district courts have held that *Booker* specifically applies to excise certain PROTECT Act provisions of the sentencing guidelines. *U.S. v. Sharpley*, 399 F.3d 123 (2nd Cir. 2005)("no unique feature of Guideline sentences for child crimes and sexual offenses that would prevent them from violating the Sixth Amendment in the same manner as Guideline sentences for other crimes"). See also *United States v. Schmitt*, 495 F3d 860 (7th Cir. 2007).

## I. Pre-Booker Sentencing Guideline Departures

### A. Age and Physical Health

Today, at almost seventy-three years of age, Mr. Robson suffers from a plethora of significant, progressive health problems. Dr. Gary Gotthelf, who is an internal medicine specialist licensed in Florida for more than thirty years who has been treating Mr. Robson for the last ten years, writes Mr. Robson "has a series of health conditions that are progressive in nature and will in all likelihood require ongoing and continued treatment. These treatments are all based on atherosclerosis, which is commonly seen in diabetics and proven via XRAYS and CT scans in Mr. Robson's case. "Within a reasonable degree of medical probability, he will likely suffer a stroke, heart attack and further degeneration of his spine and right knee. Currently, he walks with a cane after undergoing unsuccessful surgery." Dr. Gotthelf explains that at the time of his arrest, he had been treating Mr. Robson for type II diabetes, hypertension, carotid atherosclerosis, angina pectoris, calcification of his abdominal aorta area below the renal arteries, chronic obstructive pulmonary disease, spinal stenosis with sciatica, osteoporosis and hypogonadism. Mr. Robson's spinal stenosis will be progressive, which will leave him with lower extremity weakness and occasionally, numbness and tingling. He also has difficulty

urinating and has a documented calcified prostate. He has impotence from his hypogonadism and has a history or peptic ulcer disease. At the time of Mr. Robson's arrest, Mr. Robson was taking nineteen different types of medications prescribed by Dr. Gotthelf. (Ex. A, p. 1-2). Dr. Gotthelf also writes in his letter of September 13, 2012, that within a reasonable degree of medical probability, because of Mr. Robson's current serious medical issues, Mr. Robson will not survive another fifteen years. (EX B, p. 1).

The circumstance of Mr. Robson's age and poor health would, by itself, justify a downward departure from the Guidelines on the basis of USSG § 5H1.1(a).

Section 5H1.1 of the Sentencing Guidelines Manual reads:

Age (including youth) is not ordinarily relevant in determining whether a departure is warranted. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration

Section 5H1.4 of the Sentencing Guidelines Manual reads:

Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted. However, an extraordinarily physical impairment may be a reason to depart downward;

To the extent that §5H1.4 requires that the individual be "seriously infirm," which is presumably a higher standard than is found in §5H1.1, which requires only that the defendant be "infirm," Mr. Robson relies on §5H1.4.

As stated in §5H1.1, age "is not ordinarily relevant in determining whether departure is warranted." Nonetheless, circumstances such as age may be relevant "to the determination of whether a sentence should be outside the applicable guideline range" "in exceptional cases."

USSG Ch. 5, Pt. H, Intro. Comment. *See also United States v. Collins*, 122 F.3d 1297, 1307 (10th Cir. 1997). There are any number of examples where courts have concluded that circumstances such as those found in Mr. Robson's case have justified a departure under either §5H1.1 or §5H1.4.

In *United States v. Collins*, *supra* at 1307, the defendant was sixty-four years old, and suffered from "heart disease, high blood pressure, ulcers, arthritis and prostatitis." In light of Collins's "old age and ill health," the court sentenced him to forty months of incarceration for distribution of cocaine rather than the one hundred and fifty-one to one hundred and eighty-eight months recommended by the Sentencing Guidelines. In *United States v. Hildebrand*, 152 F.3d 756 (8th Cir. 1998) *overruled in part by Whitfield v. United States*, 543 U.S. 209 (2005), the court sentenced the seventy year old defendant to five years of probation with six months in a community correctional facility for mail fraud and money laundering in lieu of the fifty-one to sixty-three months recommended by the Sentencing Guidelines. The court did so even though "the Bureau of Prisons could manage Zucker's [the defendant's] conditions." *Id.* In *United States v. Jackson*, 14 F. Supp. 2d 1315, 1316 (N.D. Ga. 1998), the court sentenced the seventy-six year old defendant to eighteen months of imprisonment for eighty-three counts of mail fraud rather than the thirty-three to forty-one months recommended by the Sentencing Guidelines. The defendant suffered from severe osteoarthritis, a torn rotator cup, and chest pains. *Jackson at* 1318-1319. Even though the court recognized the Bureau of Prisons would be able to accommodate the defendant's needs, it concluded that the "combination of ailments" justified the departure. *Jackson* at 1321-1322.

**B. Acceptance of Responsibility and Remorse**

Prior to *Booker*, the Eleventh Circuit has approved sentences involving downward

departures for extraordinary acceptance of responsibility and remorse. See *U.S. v. Kim*, 364 F.3d 1235 (11th Cir. 2004) and *U.S. v. Crawford*, 407 F.3d 1174 (11th Cir. 2005). In Dr. Bingham's report he states that Mr. Robson "has and continues to experience extreme remorse, accepts full responsibility for his inappropriate behavior, and will forever have to live with the destruction he has brought about. (EX C, p. 13). "During the examination Mr. Robson expressed concern about the possible emotional harm [the child] may have experienced." (EX C, p. 9). He relayed further concerns to his daughter who took the child to a therapist who specializes in therapy for children. (EX C, p. 9).

As could be seen by his emotional plea to the Court at the plea hearing, begging the Court to allow him to spend time with his wife before he begins what will likely be a life sentence, similar emotional outbursts are witnessed when discussion turns to his criminal actions. Mr. Robson accepts full responsibility for his actions. (See PSR, ¶49).

**C. Long and Distinguished Military Career**

Effective on November 1, 2010, U.S.S.G. §5H1.1 was liberalized to state that military service "may be relevant in determining whether a departure is warranted." In any event, regardless of departures, a variance may be sound in light *Booker*, supra. See *Porter v. McCollom*, 558 U.S. __ , 130 S.Ct. 447 (2009) ("Our Nation has a long tradition of according leniency to veterans in recognition of their service…."). *Kimbrough v. U.S.* 552 U.S. 85 (2007) (in case of conspiracy to distribute crack and use of gun, district court not unreasonable in giving below guideline sentence to mandatory minimum of 15 years where courted noted that defendant "had served in combat during Operation Desert Storm and received an honorable discharge from the Marine Corps"); *U.S. v. Howe*, 543 F.3d 128 (3rd Cir. 2008) (where defendant convicted of mail fraud with loss of $150,000 and guidelines 18-24 months, sentence of

probation with 3 months home detention not unreasonable in part because of Howe's twenty years of military service followed by honorable discharge.). *U.S. v. McCaleb*, 908 F.2d 176 (7th Cir. 1990) (departure for military service might be warranted under some circumstances); *U.S. v. Neil*, 903 F.2d 564, 566 (8th Cir. 1990) (military service might warrant departure in some cases, but not here); *U.S. v. Velasquez,* 329 Fed. Appx. 365 (3rd Cir. 2009) (Sentence of 360 months in child pornography and Inducement of Minor to Perform Illegal Sex Acts case was reasonable where district court varied downward from an advisory Life Imprisonment in consideration of the defendant's "honorable service in the Navy, the positive letters received…, the defendant's lack of criminal record, and his [military] injuries."); considerations under both USSG §5H1.11 and § 3553(a)); *U.S. v. Shipley,* 560 F.Supp.2d. 739 (S.D. Iowa 2008) (In sentencing defendant to 90 months imprisonment for child pornography offenses that carried a 210-240 month advisory range, court considered among other things defendant's 10 years of military service (including 3years overseas service, a National Defense Service Medal, a Meritorious Service Medal, and an Army Commendation Medal), honorable discharge, and demonstrated remorse manifested in a suicide attempt); *U.S. v. Lett*, 483 F.3d 782 (11th Cir. 2007) (At sentencing for crack cocaine offenses, the court imposed the 60 month statutory minimum, a reduction from the 70-87 month range, noting that the defendant was "an extremely valuable asset to the United States Army, an outstanding non-commissioned officer, a model soldier, a role model with excellent work ethic, a dynamic, innovative leader, a shining example for his peers and subordinates," who had served in the Iraqi Freedom Campaign).

Mr. Robson enlisted in the U.S. Navy in 1958 at 18 years of age. He rose through the ranks to become a "Lieutenant Commander." He retired in 1986, after serving his country honorably for 28 years. Mr. Robson received numerous awards, letters of recognition of service

and letters of appreciation for numerous volunteering "over and above his call of duty" during his distinguished Naval career. He also received two Silver Stars, the COMNAVCRUTITCOM Gold Wreath Award for Excellence and the Navy Commendation Medal (Gold Star). He also was cited for meritorious service while serving as the Head of the Operating Management Department of the Naval Hospital in Pensacola FL from August 1984 through May 1986 by Admiral James D. Watkins. ("Lieutenant Commander Robson's untiring efforts, exceptional professional ability and loyal dedication to duty reflected credit upon himself and were in keeping with the highest traditions of the United States Naval Service"). (EX. D).

**D. 18 U.S. C. §3553(a) Factors**

**Forensic Psychological Evaluation**

Dr. John Bingham, a Pensacola forensic psychologist, conducted a psychosexual evaluation and risk assessment of Mr. Robson.[3] Mr. Robson made an appointment with Dr. Bingham within two days of he and his wife's home being searched. Dr. Bingham facilitates a state approved sex offender treatment program called "Cordova Counseling Center Sex Offender Treatment Program." Dr. Bingham has been involved in evaluating or treating over a thousand sexual offenders, facilitates a group meeting of sexual offenders who are released from prison, and performs "one on one" counseling of sexual offenders as well as performing forensic, psychosexual examinations for the prosecution as well as Defendant's. Dr. Bingham saw Mr. Robson either at his office or in jail on six separate occasions. (EX. C, p. 1). These interviews lasted from one to two hours each. He also had Mr. Robson take seven different types of psychological examinations that Dr. Bingham evaluated. (EX. C, p. 6-7). Dr. Bingham interviewed Mr. Robson's wife of 49 years, Helen, and his daughter Theresa Lee, one of his two

---

[3] Dr. Bingham's CV is attached to his report. (EX. C). Dr. Bingham has state of Florida government contracts to treat sex offenders and has authored numerous peer-reviewed articles on sexual addiction and issues.

children. (EX. C, p. 7-9).

Both his wife and his daughter were shocked by the charges in this case. Helen Robson explained to Dr. Bingham that "her husband has experienced a significant change during the past three years, primarily as a result of his severe medical problems. She stated that he has experienced a variety of emotions ranging from frustration to embarrassment as a result of his impotency." (EX. C, p. 7-8). Ms. Lee described her father being supportive and never did he behave in an inappropriate manner with her or any of her friends. (EX. C, p. 9). Mrs. Lee stated the child subject to the indictment Count I is doing well and not experiencing any side effects brought about by the Mr. Robson's criminal actions. In fact the child remains on the A and B honor roll at school. (EX. C., p. 9).

Dr. Bingham writes in his report that "Mr. Robson expressed concern about possible emotional harm [the child] may have experienced" because of his criminal actions and requested through Mrs. Lee that she seek the services of a counselor for the child. (EX. C, p. 9). As a result, the child was seen by Ms. Regina Dixon, LMHC, who specializes in pediatric counseling, and Mrs. Lee was informed by Ms. Dixon that the child was not experiencing any side effects or adverse consequences due to what she had experienced. (EX. C, p. 9). Mrs. Lee, knowing her father all of her life and never having seen him exhibit any signs reflective of the behavior exhibited in this case cannot grasp what medical and/or psychological issues would cause such behavior in her father. (EX. C, p. 9).

Dr. Bingham's report, pages ten through twelve, provide an explanation for why Mr. Robson committed the acts he is so charged. Dr. Bingham's diagnosis is that Mr. Robson is a "regressed offender" – he is not a pedophile and throughout his life he has shown interest in appropriate age mates. However, due to a situational crisis, that may include physical, social,

sexual, marital, financial, or vocational issues, the individual's sense of adequacy becomes so impaired the person may act out in an impulsive manner that is symptomatic of a failure to cope adaptively with specific life stressors. "More often than not he is distressed by his behavior and experiences feelings of guilt, shame, disgust, embarrassment, remorse, and dissatisfactions about what he has done. . . . it likely these factors contributed to [Mr. Robson] deleting photographs" of the child from his SD card of his camera. (EX. C, p. 11). Also Mr. Robson, prior to any law enforcement investigation, had deleted more than 3700 of the approximately 6000 photographs recovered in the law enforcements' forensic evaluation; he had also destroyed his external hard drive.

Dr. Bingham, based upon his evaluation and testing of Mr. Robson, found the following:

**1.** Mr. Robson has been suffering from moderate depression for several years;

**2.** Mr. Robson viewing child pornography has occurred only within the last several years and was used as a means of overcoming impotency, escape depression and relieve other stressors.

**3.** Mr. Robson "has and continues to have extreme remorse."

**4.** Mr. Robson accepts full responsibility for his inappropriate behavior and is deeply saddened by the destruction this has caused his family and close friends.

**5.** Mr. Robson is not a "fixated" pedophile and presents with a heterosexual orientation with appropriate age mates.

**6.** Mr. Robson does not have an anti-social personality.

**7.** Mr. Robson is at a low risk for recidivism of a sexual offense.

**8.** Mr. Robson does not present with any symptoms or behaviors suggesting

a major mental disorder.

**9.** Mr. Robson does present with a history and symptoms suggestive of depression with an overlay of anxiety.

**10.** Mr. Robson presents as a very low risk for sexual recidivism.[4]

**11.** Mr. Robson, if possible, should successfully complete a sexual offender treatment program. (Mr. Robson is extremely amenable to participating in a sexual offender program; at the time of his arrest on state charges he was receiving sexual offender counseling). (Bingham Report, EX. C., pg. 14 – 15.)

**Letters from Respected Members of the Community and Community Contributions**

The following individuals provided letters relating to Mr. Robson's nature, personality and character traits. All of these individuals were made fully aware of the child pornography production charge as well as the receipt and possession charges relating to child pornography. However, to protect the identity of the victim, most were not made aware of her identity; however, several people are aware of her identity.

1. **William C. Curry** has been Mr. Robson's neighbor and friend since 1995. "We have shared many a fishing trips together and were part of a neighborhood social group where we played cards and shared dinner together. During these times together, Dick seemed to me to be a loving Husband, Father and Grandfather, and there was no indication otherwise." Mr. Robson has maintained a healthy and long relationship with his community. Mr. Curry states that "The news of his incarceration and the charges identified in the news, have shaken me

[4] **Defendant is over the Age of 40 and Presents Little risk of Recidivism**
Defendant's age and total lack of criminal history resulting in a Criminal History Category of I are relevant to his lack of risk of recidivism. Defendants "over the age of forty . . . exhibit markedly lower rates of recidivism in comparison to younger defendants." See *Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines*, at 12, 28 (2004). The U.S.S.C. report can be found at http://www.ussc.gov/publicat/Recidivism_General.pdf.

and my family more than any event in our lives short of a death in the family. I am not sure I can even imagine the devastation this has caused his family."

2. **Linda M. Farley** has known Mr. Robson since 2000 since she moved to Coral Strip Parkway where the Robson's currently reside to this day. "Mr. Robson was like a grandfather to our two children." Mrs. Farley, like many other neighbors asserts in her letter that Mr. Robson has been a generous and compassionate neighbor through his good deeds. Mrs. Farley states the following acts that compliment Mr. Robson's generosity: "When the homes in our neighborhood were flooded from Hurricane Ivan, Mr. Robson really helped my daughter and I out again." "He was so nice to us." "I was in Lowe's one Sunday evening and found a great deal on an electric fireplace but I didn't have a truck to get it home. I phoned Mr. Robson to see if he could help me. He jumped in his truck and came right to Lowe's to help me."

3. **Robert Kormoski** is the brother of Helen Robson, Mr. Robson's wife of over 49 years. He has known Mr. Robson for 55 years and goes on to say that he looked up to him as a Sailor and brother-in-law in the following statements: "While I followed in his footsteps by joining the Navy myself, I wasn't able to make my career there, whereas Dick rode up the ranks, finally settling in, and retiring as Lieutenant Commander. An accomplishment that, still today, I hold in high regard." Mr. Kormoski entrusts his son's life in Mr. Robson's hands: "Dick is the godfather of my youngest son, Brian." Mr. Kormoski goes on to state that despite having been as supportive as possible to Helen Robson, his family cannot be there for her the way Mr. Robson has been for 49 years. "We cannot do all the things Dick did. We simply cannot." Despite the allegations against Mr. Robson, Mr. Kormoski supports Mr. Robson by saying "And whatever you do decide, Dick will remain my friend and brother in law, who has made my sister blissfully happy for almost 55 years."

4. **Ray M. Patterson and Linda Patterson** have known Mr. Robson since 2003. They are his neighbors as well as his friends. They state that not only have they vacationed with the Robson's, but have spent much time with them at home as well. They express their reaction to Mr. Robson's charges as well as the effect on his wife in this excerpt from their letter: "Having become so close to both Dick and Helen, we are quite stunned by the nature and severity of the charges against him and find it difficult to believe that he may be involved in such activities. The effect on his wife of over 49 years has been highly traumatic and exacts a heavy toll physically, emotionally, and financially on her as she attempts to maintain her part-time employment, manage their household, keep up her position in our community, and continue to be supportive of her husband." They comment on Mr. Robson's family life and his ongoing devotion to his family by saying: "From all appearances over the years, Dick has been a loyal and devoted husband and father. He seems to be loved by his grandchildren and has made some extraordinary sacrifices to sustain and support his oldest grandson throughout his school years, having bought him a car, taken him into his household at times, and paid his

college tuition." "He is well known to many in our area and has never exhibited violent or criminal tendencies, to our knowledge."

5. **Joseph A. Underwood** has known Mr. Robson for 10 or more years. He states: "I have always found Dick to be sincere, concerned, responsible, and good natured.""I feel that if I had a problem he would be one of the first ones to volunteer to help." "I think Dick is devoted to his family and his church. I am sure it is very difficult for his wife Helen to be without him. They are always nearby each other and seem to have a good relationship."

6. **L. Carter Burwell III, Col, USAF (retired) and Judith Burwell** have known Mr. Robson since 2008. In their letter to the Court they comment on his continuous generosity and the extent of his relationship with his family: "He welcomed us into his home immediately and was instrumental in introducing us to friends and neighbors. He went out of his way to help us feel at home in our new surroundings." Dick is a devoted family man who spends every holiday, birthday, special occasion and many times in between with his wife, children, and grandchildren. Their every need is a major concern to Dick, and they depend on him to a great extent economically and as the backbone of the family structure. There is no doubt that his wife and children and grandchildren admire and adore him and need him in their lives." "He served as president of our neighborhood homeowner's organization last year and spent many long hours toward improving our community." "During the period of the BP oil spill, Dick worked hard to accomplish the installation of booms in the canals to protect the properties of countless residents."

7. **Sharon and Clay Combee** have known Mr. Robson for 14 years. As close neighbors to Mr. Robson, they state in their letter that "We both know Helen and Dick to be the best neighbors you could ask for." "His incarceration has left a gigantic hole in Helen's life, and we are close enough to know the enormous burden she is carrying." "Whatever sentence he receives, she will surely serve as well." They also perceive Mr. Robson's character as a committed family man and citizen: "He is known to all of us as a strong and solid citizen, husband, father and grandfather. His years of military service have always been a strong topic of conversation, and hopefully won't go unnoticed by you." "We have been in shock for months over these allegations, and hope there is somehow some good that can come from all of this."

8. **Toni K. Smirniotis** has known Mr. Robson since childhood. In her letter she states that Mr. Robson was very close to her parents and has been a positive influence in her family's life: "As I read the newspaper of Dick Robson's charges I could not comprehend that this kind of man would have any part of these allegations." "Dick has been a great friend of my parents as far back as I can remember, even speaking at my mother's funeral." "I always remember his children looking up to him and idolizing him, Ricky always wanted to be just like his

father. He has always been a compassionate, giving man to everyone around him." "Dick is a man of many values. He is a strong man who took care of his family and always made sure to nurture his wife Helen."

9. **Theresa C. Lee** is Mr. Robson's daughter. She states in her letter to the Court that "My parents provided by brother and myself with a dependable, loving home. My father has served as an excellent role model to myself and my children. He has taught us that honesty and integrity are important."

10. **Henry Fagerskog** has known Mr. Robson since 2002. He states he was close to Mr. Robson both professionally and personally: "I have observed Dick both personally and professionally and I am proud to have Dick as a friend." "He never exhibited any behavior that would lead me to suspect him of any kind of criminal activity." And "[A]ll in all, Dick has been an active and responsible citizen who has given his time to our community." "He has always been there to lend a helping hand in our neighborhood and to assist in any project to help his friends and neighbors. "I am not aware of a single instance where Dick's behavior, or even his words, suggested he would engage in any activity that would harm another person of any age." "I believe he has worked hard all his life and it saddens me that at age 72 he faces years of incarceration for what I believe does not characterize this man."

11. **Jean Marie and Patty Broutin**, who are neighbors of the Robson's, state that they have known Dick and his family for seven years since their move to Coral Strip Parkway. They state that: "Dick has always been one of the kindest men that we know." And "We both have only positive and wonderful things to say about Dick and Helen, and we really do not think you can find anyone that really knows them that would say anything but what a wonderful couple they are and how they complement each other." They go on to explain the devastation this has caused in the lives of his loved one's by saying "This, of course, has been a nightmare for his family and close friends, and we are all praying that he will be exonerated of these charges."

12. **Richard Gutshall, Capt. MSC USN** (retired) states in his letter that he has known Mr. Robson since 1959. He attests to Dick's character as his long time friend and fellow sailor by saying "When I retired in 1991, my wife and I lived with the Robson's for three months while we house hunted." "Dick is active in the community as an entrepreneur and service oriented individual. He has owned and operated several businesses where he has a reputation for honesty and service." Most importantly, Mr. Gutshall goes on to say that "Based upon my long association and friendship with Dick Robson, I without hesitation, feel confident in my positive assessment of his honesty, integrity, and a strong moral character. In spite of charges against him, I do not believe he is a danger to children or our society. Without reservation or fear, I would entrust him with the care of my eleven year old daughter. I am proud and

honored to call Dick Robson, my friend!"

(Composite EX "E", character letters relating to Joseph "Dick" Robson)

**Conclusion**

Your honor, Mr. Robson is truly extraordinarily remorseful for his criminal conduct - he appreciates his wrongdoing. Mr. Robson is exceptionally disgusted, ashamed, and heart-broken about his criminal acts. Counsel suggests that his deletion of the images on his computers and the SD cards of his camera support his remorse and disgust with himself.

He is not a danger to the community and has an extremely low risk of recidivism according to Dr. Bingham. He had never knowingly distributed or traded materials with anyone.[5] The government's forensic evaluation found no indication he had ever had any improper contact with children over the internet. Dr. Bingham has described Mr. Robson's downloading images and molestation to be based on impulsive behavior based upon a myriad of physical and psychological issue, not because he is sexually oriented towards children.

Furthermore, he has overcome issues brought upon him by a dysfunctional childhood to achieve accolades, gold and silver stars and the rank of a Lt. Commander during his exemplary service in the U.S. Navy for 28 years.

Regardless of the lengthy period of time this Honorable Court places Mr. Robson in custody he will incur all of the collateral consequences of being a "sexual offender" the rest of his life. It is highly doubtful that Mr. Robson will survive the incarceration that this Court must impose under the law. He accepts this fact and accepts responsibility for his behavior. His love and concern for the welfare of his family is much greater than for himself.

We humbly request that this Honorable Court find given the facts of this case, consider a variance, departure or a below the advisory guidelines custodial sentence.

[5] Mr. Robson, at 72 years of age, is not sophisticated at using software programs; he was unaware that "peer to peer" programs allowed people to "upload" what was downloaded to his computer unless this feature is turned off. The photos of the child victim were never transferred to any media and were deleted due to his overwhelming guilt and shame. His disgust with himself also resulted in him deleting the majority of the child porn downloaded through the peer to peer program Emule. He did not look at most of the photographs downloaded.

Respectfully submitted,

_M. James Jenkins /s/_
M. James Jenkins, Esq.
M. James Jenkins, P. A.
1211 West Garden Street
Pensacola, Florida 32502
(850) 434-9304
FL Bar No.: 0539287
Attorney for Joseph R. Robson, Sr.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was furnished to Ryan Love, Esq., Assistant United States Attorney, 21 E. Garden Street, 3rd Floor, Pensacola, Florida 32502 via CM/ECF and hand delivery this 14th day of September, 2012. A copy of this memorandum and all of its exhibits has also been hand delivered to U.S. Probation Officer Greg Newsome.

Respectfully submitted,

_M. James Jenkins /s/_
M. James Jenkins, Esq.
M. James Jenkins, P. A.
1211 West Garden Street
Pensacola, Florida 32502
(850) 434-9304
FL Bar No.: 0539287
Attorney for Joseph R. Robson, Sr.