# Cordova Counseling Center

4400 Bayou Boulevard, Suite 8-D, Pensacola, Florida 32503 * (850) 474-9882

September 10, 2012

M. James Jenkins, PA
Attorney at Law
1211 W. Garden Street
Pensacola, FL 32502

RE:  JOSEPH RICHARD ROBSON, SR.

ATTORNEY/CLIENT PRIVILEGE

**FORENSIC MENTAL HEALTH EVALUATION**

**REASON FOR REFERRAL AND ASSESSMENT PROCEDURES:**

Pursuant to your request, a forensic mental health evaluation was conducted on Mr. Joseph R. Robson, Sr. on 3-25, 4-15, 4-25, 5-7, 6-28, and 7-23-12. The purpose of this assessment was to conduct a risk assessment evaluation.

The assessment process consisted of a mental status examination and structured clinical interview. In addition, the following tests were administered: Millon Clinical Multiaxial Inventory – III (MCMI-III), Minnesota Multiphasic Personality Inventory – 2 – Restructured Form (MMPI-2-RF), State Trait Anger Expression Inventory – 2 (STAXI-2), Test of Malingering Memory (TOMM), Static 99, Sexual Violence Risk - 20 (SVR-20), and Substance Abuse Subtle Screening Inventory – 2 (SASSI-2). Furthermore, interviews were conducted with this man's wife Mrs. Helen Robson and his daughter Ms. Theresa Robson-Lee. The following documents were also reviewed: Criminal Complaint, United States District Court, dated 3-21-12; Affidavit and Support of an Arrest Warrant (17 pages) dated 3-21-12 and signed by Special Agent Mark Henych; Numerous Medical Records provided by Dr. Gary Gotthelf, Family Physician; and Presentence Investigative Report dated 8-13-12. Finally, the following character reference letters were reviewed: Henry D. Fagerskog, Lieutenant Colonel, USMC, Retired; Toni K. Smirniotis; Sharon and Clay Combee; L. Carter Burwell III, Colonel, USAF, Retired; Robert Kormoski; and Richard B. Gutshall, Captain, USN, Retired.

DEFENDANT'S EXHIBIT C

Joseph Richard Robson, Sr.
September 10, 2012
Page 2

**INSTANT OFFENSE:**

Mr. Robson was charged with possession of child pornography and production of child pornography. The criminal complaint dated 3-21-12 alleges that these offenses occurred between 1-1-10 and 2-15-12 in Santa Rosa County.

**BEHAVIORAL OBSERVATIONS/MENTAL STATUS EXAMINATION:**

Mr. Joseph Richard Robson, Sr., born on 11-11-39, is a 72 year old, married, Caucasian male who stands approximately 5'11" tall, weighs approximately 160 pounds, and has blue eyes and gray hair. The purpose of this assessment was explained to this man, who acknowledge an understanding, and an adequate working rapport was established and maintained throughout the assessment process. Specifically, he was informed that the information generated from the evaluation would be reduced to writing and submitted to his attorney to be used at his discretion.

Because this man was being detained in the Santa Rosa County Jail at the time of assessment, he was dressed in standard issue. Nevertheless, he gave the impression of practicing adequate personal hygiene. His gross and fine motor coordination seemed satisfactory; however his gait was unsteady and he ambulated with a cane.

Mr. Robson knew who he was, where he was, and was adequately oriented to time and circumstance. His speech was clear, coherent, logical, goal directed, and spontaneous. He presented with an appropriate affect (emotional demeanor) and his mood was depressed with an overlay of anxiety likely to be situational in nature. His attention and concentration seemed adequately intact, as was his recent and remote memory. This man denies having experienced visual or auditory hallucinations, which was consistent with today's findings of no perceptual disturbances. His thoughts were grounded in reality and there was no evidence of delusional intrusion. He disclaimed suicidal ideation, intent, or plan. Mr. Robson's insight seemed to be adequate; however, his judgment has in the past been poor and impulsive in nature (during the time of the instant offense).

Joseph Richard Robson, Sr.
September 10, 2012
Page 3

**PERSONAL HISTORY:**

Mr. Robson reported that he was born and reared in the Long Island area of New York City. His father died as a result of a heart condition at the age of 72. His mother expired in 1956 due to cancer. His older brother expired during the 1970s and sister Cecile Robson died during the 1980s as a result of polio. His only living sister Jeanne Giwoyna, 85 years of age, resides in New York.

During his developmental and formative years, Mr. Robson was exposed to parental and sibling alcoholism (father and brother). At times this led to neglect. As one example, his father who was a salesperson would often "drink his paycheck up" leaving little, if any, money for the household. Mr. Robson was exposed to alcohol consumption as early as eight when his father and brother brought him to the local pub and "gave me a shot of whiskey." Mr. Robson appears to have been reared in a dysfunctional familial environment. He was 15 years of age at the time of his mother's death. With his father drinking alcohol frequently, and in the absence of his mother, Mr. Robson had few, if any, boundaries to conform to. In other words, minimal supervision.

He advised that he joined the United States Navy at the age of 18 (1958) and retired as a Lieutenant Commander in June of 1986. He married his only wife, Mrs. Helen Robson, in 1963 and they moved to Pensacola in 1964. To this union two children were born; his son Mr. Joseph Robson, Jr., 46 years of age, who is a Commander in the United States Navy and stationed at Norfolk, Virginia. He serves as an Intelligence Officer at the Pentagon. His daughter Mrs. Theresa Robson-Lee is a registered nurse (RN) employed at the Gulf Breeze Hospital. Both Mr. and Mrs. Lee reside in Navarre, Florida.

While in the Navy Mr. Robson began as a hospital corpsman, but later advanced to the rank of Lieutenant Commander, during which time he served as an Administrative Officer. Upon his retirement from the Navy he was employed with the Child Support Intervention Team with Health and Rehabilitative Services. He advised that his primary task was to locate "deadbeat parents." He was employed by that agency in 1988. In 1990 he worked in home maintenance and repair, and in 1991 opened up a boat dealership (Gulf Breeze Marine Boat Sales), which he continues to own. Until recently Mr. Robson was active in the Sertoma Club and served as their treasurer; he resigned as a result of his pending legal issues.

Joseph Richard Robson, Sr.
September 10, 2012
Page 4

At the age of 11 he underwent an orchiectomy (surgical removal of testicle). This resulted in his becoming the brunt of many jokes, ridicule, and bullying. On one occasion he was taken into the woods by a group of boys, stripped naked, and tied to a tree while girls in the group watched. After this form of humiliation, Mr. Robson refused to take showers in gym or place himself in situations where he might be forced to disrobe.

He earned a BS Degree in Business in 1975. He also has completed coursework toward his Master's Degree.

Mr. Robson is experiencing a host of medical problems, as documented in his medical records. As a young child it was necessary for Mr. Robson to undergo an orchiectomy (surgical removal of testicle). In 1975 he experienced a cerebral vascular accident, which has since been resolved. In addition, he is being treated for numerous medical problems including Angina Pectoris, B-complex deficiency, BPH (Benign Prostate Hyperplasia, enlarged prostate), general osteoarthritis, hypertension, osteoporosis, including compression of both upper and lower spine, sciatica secondary to bulging discs; COPD; dishypercholesterolemia, situs inversus, torn medial meniscus (knee), testicular hypofunctioning, diabetes, carotid atherosclerotic disease, artheroslerotic vascular disease of the abdominal aorta. As described by his treating physician Dr. Gotthelf, Mr. Robson's medical conditions are progressive in nature and will require continued medical supervision and treatment. In addition, he has been prescribed numerous medications in an attempt to control and resolve the symptoms related to the previously mentioned medical problems. Other medications taken as needed for anxiety include Xanax, .5 mgs. tablets.

Mr. Robson reported that he began consuming alcohol around the age of 18. He drinks one to two drinks on social outings. He denied using alcohol in the home. He also denied having used any other chemical substances. This man has smoked cigarettes for over 40 years. He has only recently discontinued the use of this substance.

**SEXUAL HISTORY:**

Mr. Robson reported that he began puberty around 12 years of age. He advised that he began masturbating when he was 13 years of age, learned through self-discovery. He experienced

Joseph Richard Robson, Sr.
September 10, 2012
Page 5

sexual intercourse for the first time at the age of 21. He stated that he has had sexual relations with six different females. He denied ever having engaged in any homosexual activity.

Approximately three years ago Mr. Robson began viewing adult pornography. He described viewing these materials on a frequent basis. He indicated that he began viewing pornography as a means of reducing his impotency. He described himself as having viewed a variety of adult pornography during this quest. During this process he discovered "E-Mule." Apparently this is a peer-to-peer site that hosts a variety of different types of pornography. According to Mr. Robson, it was on this site that he discovered child pornography.

As described by Mr. Robson, "E-Mule" provides a multitude of different forms of pornography. When downloading from this site, one is often unaware of what type of pornography will be received. He was initially disgusted, but continued to view some of the child pornography between late prepubescent and early pubescent. When questioned about his viewing, Mr. Robson replied that he did this out of morbid curiosity. Further inquiry revealed that Mr. Robson had not experienced any type of sexual stimulation, i.e. erection, from any of the pornography.

**TEST RESULTS:**

**A. Millon Clinical Multiaxial Inventory – III (MCMI-III):** This instrument is a psychological assessment tool intended to provide information on psychopathology, including specific disorders outlined in the DSM-IV. His response on this instrument suggested a tendency toward avoiding self-disclosure, suggesting possible broad deficits in introspectiveness and psychological mindedness owing to emotional impoverishment and/or thought vagueness. This clinical profile is characterized by social propriety, dependency, and periodic efforts at assertiveness. His fear of losing emotional support seems to have led him to overly compliant and obliging behaviors. His thinking seems to be unreflected and scattered, and when faced with interpersonal tensions he may seek constant signs of reassurance and/or try to maintain an air of buoyancy, thereby denying disturbing thoughts.

Often this man seems to be accommodating and responsive to the needs of others. He tends to seek harmony with others, often at the expense of his own values and beliefs. He generally avoids situations that may involve conflict and seems to have learned to accept a submissive position. This man seems to be uncomfortable when alone and has preoccupied concerns of

Joseph Richard Robson, Sr.
September 10, 2012
Page 6

abandonment, forcing him to be responsive to the needs of others. In the past he may have learned to accept a submissive position, allowing others to assume the role of being more useful and competent than himself. Any loss of significant emotional support and guidance may very well result in acute distress. Guilt, illness, anxiety, and depression may be displayed instrumentally to deflect serious criticism.

**B. Test of Malingering Memory (TOMM):** As one means of detecting malingering, the TOMM was administered. This instrument is a visual recognition test that helps the practitioner distinguish between malingered and true memory impairments. Mr. Robson's response on this instrument for Trial 1 was 50, Trial 2 was 49, and Trial 3 (retention trial) was 50. These scores suggest that he was putting forth his best effort and there was no indication of memory malingering.

**C. State Trait Anger Expression Inventory – 2 (STAXI-2):** This instrument was administered as one means of identifying how Mr. Robson expressed anger. His response on the STAXI-2 was found to be within normal parameters, indicating no abnormality in anger management issues.

**D. Substance Abuse Subtle Screening Inventory – 2 (SASSI-2):** Mr. Robson stated that he does not use alcohol in an abusive manner. As one way of evaluating his statement, the SASSI-2 was administered. His response on this instrument suggests that there is a low probability of him having a substance dependence disorder. Furthermore, his response was found to be valid, as indicated by the Validity Scale.

**E. Minnesota Multiphasic Personality Inventory – 2 – Restructured Form (MMPI-2-RF):** This instrument was administered as one means of identifying personality disorders that may be present. His response on this instrument was found to be valid. However, because of his over concern with making a good impression, he was reluctant to disclose information about personal adjustment, resulting in a defensive posture. His Clinical Scale Prototype was determined to be an elevation on Scale 1. This is consistent with the numerous physical/medical problems he has been experiencing for some time. As a result of his genuine medical problems, this man seems to become immediately distressed whenever he experiences symptoms that are inconsistent with his daily activities. In other words, his somatic problems are the basis for what he perceives to be physical illnesses. He seems to be quite dissatisfied with life and pessimistic about his future.

Joseph Richard Robson, Sr.
September 10, 2012
Page 7

His tendency to react to even minor stressors with vague physical complaints may have provided him with secondary gain, even though he does not appear to be aware of this circumstance.

At times he can be interpersonally insensitive and intolerant of others. He may likely be somewhat narrow-minded and a closed person. Because of his somewhat passive dependency, he may tend to be a demanding person who attempts to dominate relationships. He seems to require excessive amounts of emotional support from his spouse, and because he may be overly concerned with his health, he can become preoccupied with his physical problems. He can be quite outgoing and sociable, and has a strong need to be around others. He can also be gregarious and enjoy attention. Personality characteristics related to social introversion/extroversion tend to be stable over time. Diagnostic Impression would likely be a Somatoform Disorder with an Axis II diagnosis with dependent personality. Importantly, Scale 5 (Masculinity – Femininity) were low (T =36), as was Scale 4 (Psychopathic Deviant, T = 54). These scores indicate that these personality traits are absent in his protocol.

**F. Sexual Violence Risk - 20 (SVR-20):** As one means of identifying risk factors, the SVR-20 was utilized. Based on comprehensive risk assessment, it is this examiner's opinion that Mr. Robson poses a low risk for sexual violence, relative to other sexual offenders incarcerated in correctional services. Follow-up studies have indicated that approximately 10% of sexual offenders in correctional services are charged with new sex offenses within one year of their release from prison. This figure expands to approximately 10% - 15% 10 years later. It is my opinion that Mr. Robson's sexually violent recidivism is substantially lower than these estimates.

**G. Static 99:** Mr. Robson scored 0 on this risk assessment instrument. Typically individuals with these characteristics on average sexually reoffend at 5% over five years and 11% over 10 years. Based upon the Static 99 score, this placed Mr. Robson in the low risk category relative to other adult male sex offenders.

**INTERVIEW WITH FAMILY MEMBERS:**

**A. Interview with Mrs. Helen Robson:** On 5-7-12 an interview was conducted with Mrs. Helen Robson, 69 years of age. Mrs. Robson is an RN and employed with Blue Cross/Blue Shield as an auditor. She married Mr. Robson in 1963 and advised that this is their only

Joseph Richard Robson, Sr.
September 10, 2012
Page 8

marriage. She described a loving and supportive relationship between the two and advised that she continues in her support with her husband under the current circumstances.

Mrs. Robson described her husband as being an excellent father and provider. She also stated that he has always been faithful to her and indicated that they had never become involved in any significant arguments, and certainly not physical altercations. She also described his dedication to his children, along with the sacrifices both of them have made to provide for the children.

Mrs. Robson stated that her husband has experienced a significant change during the past three years, primarily as a result of his severe medical problems. She stated that he has experienced a variety of emotions ranging from frustration to embarrassment as a result of his impotency. She described how they had worked on this issue together. She also mentioned having been able to assist her husband with his numerous medical problems.

This woman described how her husband was very close to his granddaughter Alexa. She described occurrences in which she had opportunity to observe the two interact. On these occasions she reported that there was no indication of any inappropriate behavior. She remains confused and continues to have difficulty understanding Mr. Robson's inappropriate behavior with his granddaughter. She does not understand why he had been viewing child pornography. She was even further dismayed and stunned by learning of Mr. Robson's taking nude photographs and abuse of his granddaughter.

**B. Interview with Mrs. Theresa Lee:** On 6-28-12, an interview was conducted with Mrs. Theresa Lee. Mrs. Lee is the mother of the victim and daughter to Mr. and Mrs. Robson. Mrs. Lee practices as an RN at a local hospital in Gulf Breeze, Florida.

As described by Mrs. Lee, her father was always attentive to both her and her brother. Even though he was away from the family on several occasions as a result of him being in the United States Navy, he was described as "always being there for us emotionally." When with the family, he served as a "very positive role model." Mrs. Lee reported that she has been closer to her father than her mother, stating that she could always "tell him things" that she could not discuss with her mother, as "she was often judgmental."

Mrs. Lee stated that after her father retired from the service he became more active with the family and mentioned how helpful he was in assisting her with the rearing of her son. She

Joseph Richard Robson, Sr.
September 10, 2012
Page 9

described how Mr. Robson was active in different sports and would always be there to ensure that her son was able to engage in the activities when she could not be present. She mentioned that he helped coach her son Ryan's baseball team and was involved in other sports in which her son participated in.

During her childhood, Mrs. Lee described how her father was supportive and helpful when her friends would spend time at their home. In addition to supervision and engaging in childhood activities, i.e., reading to them, etc., Mrs. Lee stated that there was never any indication of her father having ever behaved in an inappropriate manner with her or any of her friends.

During the examination Mr. Robson expressed concern about possible emotional harm his granddaughter may have experienced. He questioned the possibility of his granddaughter being provided counseling. This concern was related to the child's mother. Due to the nature of this case, this examiner recommended to Mrs. Lee that she have her daughter seen by a clinician to determine if her daughter was experiencing any emotional conflicts due to the circumstances involved. She was seen by Ms. Regina Dixon, LMHC, on several occasions. Mrs. Lee stated that she was informed by Ms. Dixon that her daughter was in fact doing well and not experiencing any side effects brought about by the interaction that she had experienced with her grandfather. Mrs. Lee also stated that her daughter had not exhibited any inappropriate behavior or problems since the critical incident in the home or school. In fact, her daughter completed the 4th grade and was on the A and B Honor Roll throughout the year. As a result, she was promoted to the 5th grade.

Mrs. Lee stated that she has been made aware of her father's inappropriate behavior. She still has difficulty understanding what medical and psychological issues would result in this behavior. Nevertheless, she remains supportive of her father.

**CHARACTER REFERENCE LETTERS:**

Several letters of character reference were received by different individuals in the community. Some of these individuals have known Mr. Robson for approximately 50+ years. They describe him as being active in the community and volunteering his services for several different organizations. These individuals that have provided reference have interacted with Mr. Robson, as well as his family, and have shared extended times together. Several of these references

Joseph Richard Robson, Sr.
September 10, 2012
Page 10

describe how he "stepped forward" when there was a need in the community or by one of his friends. He has been a leader in specific service organizations, has remained active in his church, and donated his time, effort, and money to the community.

Letters from retired Naval, Marine Corps, and Air Force officers attest to his performance while he was in the military, which was nothing short of honorable. Several scenarios described what an excellent father he had been, as well as the love and devotion he demonstrated for his family. These individuals also described how Mr. Robson had interacted with their children, as well as the trust they had for him. One of the letters submitted (Ms. Toni Smirniotis) described how she had known Mr. Robson since she was a young child. She mentioned that he had been involved with numerous family gatherings and even babysat her as a young girl. She mentioned how this man's children idolized him and set their goals for achievement based on their father.

In summary, each of the letters, although acknowledging the activities for which Mr. Robson had now been charged with, stated that his behavior at the time of the offense was not characteristic and not a factual characterization of his behavior as a father, husband, or member of the community.

**DISCUSSION:**

Unfortunately, the lay person's understanding and stereotypical beliefs about child offenders is based more on myth than the scientific data that has been accumulated during the past 30+ years. The appeal to their views is understandable, for these beliefs reduce a very complex multidetermined behavior to a very simple, single cause. The stereotypes and generalizations are easier to understand and accept, than reality.

Adults who have become sexually involved with a child can be classified into two distinct groups on the basis of whether the involvement constitutes a persistent pattern (a fixation) or a new activity or change (a regression) in their sexual orientation or lifestyle.

Typically, a regressed child offender is an individual who has always preferred peers or adult partners for sexual gratification. Throughout his sociosexual development, the regressed offender exhibits an appropriate interest in age mates. However, due to situational crisis, which could be physical, social, sexual, marital, financial, or vocational, undermines his sense of

Joseph Richard Robson, Sr.
September 10, 2012
Page 11

adequacy. His self-image and sense of identity is then further impaired by some challenge in his sexual adequacy or threat to his sense of competence as a man.

Whatever the situational crisis may be, it precipitates the sexual involvement with a child. The person's offense is very often an impulsive and desperate act that is symptomatic of a failure to cope adaptively with specific life stressors. Furthermore, the regressed offender has not exhibited any predominant sexual attraction to significantly younger people during his sexual development. More often than not he is distressed by his behavior and experiences feelings of guilt, shame, disgust, embarrassment, remorse, and dissatisfaction about what he has done, even though these feelings occur after the fact. It is likely these factors contributed to him deleting the photographs.

At the time of the sexual activity, the offender is typically in a state of depression and partial disassociation in which he does not think about what he is doing, he suspends his usual values, his controls are weak, and he behaves in a way that is in most respects counter to his usual standards and conduct.

Throughout his life, Mr. Robson appears to have always been a productive member of society. Overcoming a dysfunctional childhood, he joined the United States Navy in 1958, marrying his one and only wife Helen approximately five years later. He served honorably during his tenure in the navy and held the rank of Lieutenant Commander when he received his Honorable Discharge in 1986. By the union of Mr. Robson and his wife Helen, two children were born, now adults. A son who served in the navy and his daughter who is a registered nurse and works locally. He is described by his wife, as well as his daughter and other letters of character reference, as an excellent parent and devoted his life to providing for his family and children.

Following his retirement he continued to remain gainfully employed, continuing to provide support for his family. He has also contributed to his community by volunteering in different organizations, the most recent of which was the Sertoma Club.

On review of his personal history, there was no indication or behaviors to indicate (verified by psychological testing) the development of sociopathic ideals or behaviors, and he has avoided law violations. In addition, he has never used any chemical substances other than alcohol, which seems to be on a very infrequent basis, limited to social outings.

Joseph Richard Robson, Sr.
September 10, 2012
Page 12

During his late 30s, this man began to experience significant medical problems, as evidenced by a cerebral vascular accident occurring in 1975. Since then his medical condition has gradually deteriorated to such a degree that he now, or in the recent past, has been prescribed and required to take approximately 19 or 20 different medications. Some of the more severe medical problems that require frequent and consistent medical observation include angina pectoris, osteoporosis, hypertension, hypercholesterolemia, and diabetes.

Although only recently detected, Mr. Robson appears to have been suffering from moderate depression for several years. Contributing to his state of depression has been unsuccessful attempts to conquer erectile dysfunction and stressors resulting from business failures brought about by prevailing poor economic conditions. The combination of these events seems to have resulted in his feeling periods of hopelessness and failure. To some degree his marital relationship suffered because of his tendency to avoid intimacy as a means of preventing additional failure. Based on review of his medical records and consult with his physician, Mr. Robson's medical problems are progressive in nature and will require ongoing and consistent medical treatment. Due to the nature of his condition, effective treatment will require progressive interventions.

On or about 1-10-10, Mr. Robson turned to viewing pornography in search of ways to overcome periods of impotency, escape depression, and other stressors. During this quest he unfortunately discovered E-Mule. This resulted in Mr. Robson engaging in uncharacteristic and reprehensible behaviors that he could never have imagined himself involved with. This late onset of morbid curiosity and criminal behavior has demeaned a person with otherwise good character, placed untold stressors on his family members, and endangered the emotional welfare of his granddaughter.

Only recently has he begun to fully understand the consequences of his actions that resulted in being designated a sexual offender. No longer will he be able to remain with his family, as he will be separated by a period of imprisonment. During this time he will forfeit all of his military pay and Social Security income while imprisoned. During his period of incarceration, his wife may also lose part or all of the military benefits she receives as a dependent. The stigma of his being a convicted felon, greatly exacerbated by being designated as a sexual offender, will overshadow his previous good deeds, as well as stigmatizing his family. Although he has in the past contributed to volunteer organizations, because of his sexual offender designation he will be

Joseph Richard Robson, Sr.
September 10, 2012
Page 13

either ostracized or rejected from these endeavors, even after paying his debt to society by way of imprisonment.

Even though his egregious behavior would suggest otherwise, Mr. Robson cares for and loves his wife, his children, and his granddaughter. He has and continues to experience extreme remorse, accepts full responsibility for his inappropriate behavior, and will forever have to live with the destruction he has brought about.

**FACTORS IN RECIDIVISM:**

Approximately 3% of the adult male population will eventually be convicted of a sexual offense; however, not all sexual offenders are equally likely to reoffend. The observed sexual offender recidivism rate among typical groups of sex offenders is in the range of 10% to 15% after five years. Although all sexual offending is socially deviant, not all offenders have an enduring interest in sexual acts that are illegal.

Sex crimes, like other crimes, are typically associated with antisocial orientation and lifestyle instability (crime – prone personality). Specifically, antisocial orientation (history of rule violation, antisocial personality and traits) was the major predictor of sexual recidivism and any form of recidivism in general (nonsexual crimes). As might be expected, different types of sexual deviancy were also associated with sexual recidivism. The general categories of sexual attitudes and intimacy deficits were also consistent with sexual recidivism.

When conducting a risk assessment, it is important to consider that initiating factors (factors associated with becoming a sexual offender) need not be the same factors that predict recidivism. In general, these factors are the ones targeted for treatment intervention. Another consideration is the approach. Studies have indicated that empirical-guided and actuarial approaches are considered best practices. Finally, factors in risk assessment focus on probability of future occurrences as opposed to originating offense, i.e., probability of reoffense.

Joseph Richard Robson, Sr.
September 10, 2012
Page 14

**FINDINGS:**

Based on an empirical-guided evaluation using actuarial instruments, the following results are offered:

1) Mr. Robson presents with a heterosexual orientation with age mates.
2) The nature of his offense suggests characteristics of a regressed child offender (acute situation).

3) This man did not present with characteristics suggestive of a fixated (pedophile) child offender, i.e., sexually attracted primarily or exclusively to children (chronic condition).

4) There was no indication that Mr. Robson presented with an antisocial orientation or lifestyle instability. This was confirmed by clinical interviews, letters of character reference, and test results.

5) Mr. Robson did not present with any symptoms suggestive of substance abuse or dependency. This was confirmed by test results and personal history.

6) MMPI-2-RF test results determined that the Masculinity - Femininity Scale and Psychopathic Deviant Scale were low. Elevations on these scales are predictive of higher risk levels.

7) Based on the results from the SVR-20, Mr. Robson poses a low risk for sexual violence relative to other sexual offenders incarcerated in correctional services.

8) Mr. Robson's response on the Static 99 was in the lowest range of all categories. Typically individuals with these characteristics on average sexually reoffend at 5% over five years and at 11% over 10 years. Mr. Robson was determined to be in the low risk category relative to other adult male sex offenders as a result of his score on the Static 99.

9) Mr. Robson does not present with any symptoms or behaviors suggestive of a major mental disorder. He does present with a history and symptoms suggestive of depression (moderate) with an overlay of anxiety.

Joseph Richard Robson, Sr.
September 10, 2012
Page 15

**SUMMARY:**

Based on all information that has been provided, including test results and clinical interviews, Mr. Robson presents as a very low risk for sexual recidivism. The strength of these findings will be greatly increased once Mr. Robson has had opportunity to successfully complete a sexual offender's treatment program.

END REPORT


John E. Bingham, Ed.D., LMHC

JEB/jec

# Cordova Counseling Center

4400 Bayou Boulevard, Suite 8-D, Pensacola, Florida 32503 • (850) 474-9882

## PROFESSIONAL VITA
## JOHN E. BINGHAM, ED.D., LMHC

**EDUCATION:**

Nova University, Doctor of Education, 1985
University of West Florida, Master of Arts, Clinical Psychology, 1974
University of West Florida, Bachelor of Arts, Psychology, 1973
Pensacola Junior College, Associate of Arts, General Science, 1971

**LICENSES AND BOARD CERTIFICATIONS:**

Licensed Mental Health Counselor, State of Florida, #MH000048
Diplomate in Behavioral Medicine, International Academy of Behavioral Medicine,
    Counseling & Psychotherapy, #810
Certified Clinical Mental Health Counselors, #7800
National Board for Certified Counselors, #7800
Masters Addiction Counselor, #7800
Diplomate and Fellow, American Board of Medical Psychotherapists, #3082-1999
Forensic Evaluator – Department of Health & Rehabilitative Services
Certified Family Mediator #03080F, Supreme Court of Florida
Certified Dependency Mediator
Qualified Supervisor, MHC, State of Florida, Department of Professional Regulation
Masters Addiction Counselor, NADDAC certification commission

**PROFESSIONAL MEMBERSHIPS:**

American Counseling Association
American Mental Health Counselors Association
Florida Counseling Association
Florida Mental Health Counselors Association
National Association for the Treatment of Sexual Abusers
Florida Association for the Treatment of Sexual Abusers

Bingham-Turner & Associates

Professional Vita
John E. Bingham, Ed.D., LMHC
November 2011
Page 2

## HONORS AND AWARDS:

Psi Chi National Honor Society in Psychology
Florida Council on Crime and Delinquency Community Service Award in Corrections
   and Rehabilitation

## PROFESSIONAL EXPERIENCE:

Clinical Practice, 1982 - Present
Certified Dependency Mediator, 1999 - 2000
Certified Family Mediator, 1992 - 2000
Clinical Director and Assessor for Domestic Violence/Batterers Intervention Program,
   Cordova Counseling Center, 1990 - Present
Clinical Evaluator, TASC, Health and Rehabilitative Services, District One, 1982 - 1996
Director, Adolescent and Adult Residential Treatment, Lakeview Center, Inc., 1977 –
   1982
Psychotherapist, Outpatient Department, Community Mental Health Center 1974 - 1977
United States Navy, 1966 - 1970

## CONSULTANT:

Chief Judges Task Force for Alternatives to Incarceration, 1995 - 1996
Chief Judges Task Force on Children, First Judicial Circuit, 1992 - 1993
Treatment Consultant, Escambia County School Board and Escambia County Employee
   Assistance Programs, 1990 - Present
American Mental Health Counselors Association - Forensic Mental Health, 1986
United States Veterans Administration, Consultant on Post Traumatic Stress Disorders,
   1985
Lakeview Center, Inc., Post Traumatic Stress Disorder, 1982 - 1985
Governor's State TASK Force, District I, Teenage Suicide, 1984
District I Mental Health Board, Mental Health Treatment and Monitoring, 1993
First International Action Conference on Substance Abuse - Solvent Abuse, 1978

Professional Vita
John E. Bingham, Ed.D., LMHC
November 2011
Page 3

### RESEARCH/GRANTS/CONTRACTS:

Department of Juvenile Justice, 2002 - Present
Federal Probation, Drug, Alcohol, Mental Health, and Sexual Offender, 1996 - Present
Federal Bureau of Prisons, Drug, Alcohol & Mental Health Treatment Program,
    1996 - 2005
State of Florida, Department of Corrections, Intensive Day/Night Substance Abuse
    Treatment Program Director, 1994 - 1997
State of Florida, Department of Corrections, Psychological Treatment Services, Program
    Director, 1993 - Present
State of Florida, Department of Corrections, Outpatient Drug Treatment Services,
    Program Director, 1993-Present
Federal Contract, Domestic Violence, Family Services, U.S. Naval Hospital, Pensacola,
    Florida, 1993 - 1995
Alcohol and Drug Treatment, Pre-Trial Release, 1990 - 1996
Federal Contract, Family Service Center, Domestic Violence, Whiting Field, 1986 - 1987
Family Mediation Unit of Escambia County, First Judicial Circuit, Project Director,
    1985 - 1998
Bureau of Criminal Justice, "Project Proteen," Project Director, 1985 - 1986
Escambia County School System, "Project Say No," Project Director, 1983 - 1987
Federal Contract, Domestic Violence, Family Services – USMC, Cherry Point, 1983
Governor's TASK Force, "Youth and Alcohol Use and Abuse," Research and Treatment,
    1979

### PUBLICATIONS AND PAPERS:

Short-Term Community-Based Treatment for Sexual Offenders: Enhancing
    Effectiveness, Sexual Addiction and Compulsivity, 7:211-223, 2000
"On-Line Sexual Addiction: A Contemporary Enigma," Psychological Reports, 79,
    257-258, 1996
"Treatment of Sexual Offenders in an Outpatient Community-Based Program"
    Psychological Reports, 76, 1195-1200, 1995
The "Advocate," Forensic Network, Chair, American Mental Health Counselor's
    Association, 1993 - 1996
"Forensic Mental Health: A New Task for an Old Profession," presented at American
    Association of Counseling and Development, National Convention, Cincinnati,
    Ohio, 3-18-90
"Forensic Mental Health," paper presented in November 1989, 40th Annual Conference,
    Florida Association for Counseling and Development
"House Arrest: A Viable Alternative for Sex Offenders?," Psychological Reports, 1989,
    65, 559-562

Professional Vita
John E. Bingham, Ed.D., LMHC
November 2011
Page 4

## PUBLICATIONS AND PAPERS (CONTINUED):

"Advanced Clinical Assessment with the Criminal Justice Client" A Trainees Manual,
    Florida Alcohol and Drug Abuse Association, 1983
"Adolescent Residential Treatment: An Overview," Alcohol Education and Training
    News, Vol. 2, No. 4, September 1979
"Treatment of Toluene Dependency by Covert Sensitization," Drug Forum, Vol. 7, No. 1,
    1979
"Experts Interviewed on Sniffing Dangers," Drug Survival News, Vol. 7, No. 2,
    September – October 1978

## ACADEMIC AFFILIATIONS:

Adjunct Assistant Professor, Behavioral Science and The Law, Department of Criminal
    Justice, University of West Florida, September 2001
Adjunct Assistant Professor, Behavioral Science and The Law, Department of Criminal
    Justice, University of West Florida, September 1999
Adjunct Assistant Professor, Law & Human Behavior, Department of Criminal Justice,
    University of West Florida, September 1998
Adjunct Assistant Professor, Introduction to Forensic Studies, Department of Criminal
    Justice, University of West Florida, January 1998
Adjunct Assistant Professor, Crime/Drugs, Department of Criminal Justice, University of
    West Florida, 1996 - 1997
Adjunct Associate Professor, Forensic Psychology, Department of Psychology,
    University of West Florida (graduate studies), 1986
Internship Supervisor – University of West Florida, Department of Psychology,
    1981 - 1982
Practicum Supervisor – University of West Florida, Department of Psychology, 1975
Intelligence Testing Consultant, Career and Life Planning, University of West Florida,
    Department of Psychology, 1974

## COMMUNITY SERVICE:

Board of Directors, Big Brothers/Big Sisters, Member of Executive Board and Chair of
    the Program Committee, 1996 – 1999
U.S. Court Reentry Program, 2010 - Present