UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.                                    Case Nos.    3:12cr28/RV/CJK
                                                   3:13cv500/RV/CJK

JOSEPH RICHARD ROBSON, SR.
_____/

<u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum of law. (ECF Nos. 50, 51).   The Government has filed a response (ECF No. 68) and Defendant has filed a reply.  (ECF No. 77).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND[1]

Defendant was charged in three count indictment with production of child pornography ("Count One"), receipt of child pornography ("Count Two"), and possession of child pornography ("Count Three"). (ECF No. 11). Defendant retained attorney James Jenkins to represent him.

Defendant pleaded guilty pursuant to a written plea agreement, which provided that Defendant would plead guilty to Counts One and Two (production and receipt of child pornography) in exchange for the dismissal of Count Three (possession of child pornography). (ECF No. 71 at 2–3; ECF No. 28).  Defendant indicated at the plea proceeding that he had reviewed and understood the statement of facts he signed, that he agreed with the contents thereof, and he understood the penalties he faced including the importance of the sentencing guidelines.  (ECF No. 71 at 15–18; ECF No. 27).  With respect to the plea agreement, Defendant admitted he had carefully read and gone over the agreement, and that there had been no threats or promises of any type leading to him signing the agreement.  (ECF No. 71 at 19–20).  When asked

---

[1]Detailed statements of facts describing the offense conduct are set forth in the Statement of Facts and the  Presentence Investigation Report (ECF Nos. 27, 41) and will be set forth herein only as necessary.

Case Nos. 3:12cr28/RV/CJK; 3:13cv500/RV/CJK

if he had any questions about his case, Defendant responded "No sir.  I'm guilty.  I'm sorry."  (ECF No. 71 at 21).

The Presentence Investigation Report ("PSR") assigned a base offense level of 32.  (ECF No. 41, PSR ¶¶51–53).  As for upward adjustment, Defendant received: (1) a four level adjustment because the offense involved a minor who had not attained the age of twelve; (2) a two level adjustment because the offense involved the commission of a sexual act or sexual conduct; (3) a four level adjustment because the offense involved material that portrayed sadistic or masochistic conduct or other depictions of violence; and (4) a two level adjustment because Defendant was a relative of the minor involved in the offense.  (ECF No. 41, PSR ¶¶54–57).  After a three level adjustment for acceptance of responsibility, Defendant's total offense level was 41.  (ECF No. 41, PSR ¶¶ 62–65).  Defendant had no prior criminal history and, accordingly, his criminal history category was I.  The applicable guidelines range was 324 to 405 months.  Additionally, Count One carried a minimum mandatory term of 15 years imprisonment and a maximum of 30 years, and Count Two had a minimum of five years imprisonment and a maximum of 20 years.

At sentencing, the defense did not offer any substantive or factual objections to the PSR.  (ECF No. 63 at 3–5).  After hearing from counsel and the Defendant, the

court sentenced him to a term of 360 months as to Count One and 180 months as to Count Two, to be served concurrently with each other and with any sentence that might be imposed by the Circuit Court of Santa Rosa County, Florida, docket number 2012-CF-1187, state charges arising out of the same conduct.  (ECF No. 63 at 30).  The court noted that the sentence was below the midpoint of the guideline range, taking into account Defendant's advanced age and a number of mitigating factors which it then balanced with the aggravating factors in his case.  (*Id*.).

Defendant did not appeal, but he timely filed the present motion pursuant to 28 U.S.C. § 2255.  In his motion, Defendant separates his claims into four grounds for relief, each assailing a different aspect of counsel's performance at sentencing.  The Government opposes the motion.

## LEGAL ANALYSIS

### General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral

attack.  *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a § 2255 motion which have been resolved on direct appeal.  *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under § 2255.  *Nyhuis*, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual

allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under § 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a § 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (*quoting Mills*, 36 F.3d at 1055).  Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a § 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235.

A meritorious claim of ineffective assistance of counsel can constitute cause.  *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d, 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir.2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering

all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (*quoting Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (*quoting Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (*quoting Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333-34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would

have chosen it.'" *Dingle*, 480 F.3d at 1099 (*quoting Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).  Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.  A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."  *See* 28 U.S.C. § 2255(b); *Rosin v. United States*,786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).  Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.  *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).  To be entitled to a hearing, a defendant must allege facts that, if true would prove he is entitled to relief.  *See*

*Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop-Redin v. United States*, 767 F .3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are ... based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239. Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

Ground One

Defendant first claims that counsel was constitutionally ineffective for failing to request a downward departure at sentencing "based on lack of empirical data." (ECF No. 54 at 8). Defendant argues that a below guidelines sentence would have been appropriate in his case. He cites a study[2] showing that approximately 35 to 44 percent of offenders sentenced under § 2G2.2 of the guidelines were sentenced to less than the minimum recommended guideline or sentence range. (ECF No. 54 at 9).

---

[2]This report is described by Defendant as "a study reported by the Sentencing Commission for sentence disparities between FY 2007 through FY 2009. . ." (ECF No. 54 at 9).

Similarly, Defendant claims that about 15% of defendants sentenced under § 2G2.1 were sentenced below the applicable guidelines range.

Defendant argues that his actions, although highly inappropriate, did not rise to the level of making him a "purveyor of child pornography" because he deleted the images he created within hours of their creation and he never transferred them to any other media.  He also notes that the parties stipulated to the fact that he never intended to distribute, use, or otherwise gain from the creation of the pornographic images he created.  (ECF No. 54 at 10).

Defendant also asserts that his sentence is "disparate," in that he is serving the same sentence as an individual who was convicted of producing, directing and starring in movies depicting the rape, sodomy, and sexual torture of over 50 girls in Cambodia over a four or five year period. *United States v. Irey*, 612 F. 3d 1160 (11th Cir. 2010).

In light of the foregoing,  Defendant asserts that counsel was constitutionally ineffective for his failure to move the court for a downward departure based on policy considerations alone.  Defendant asserts that, had counsel taken such action, he would have received a sentence in the range of 17 to 20 years, which would have been

"significantly more appropriate to his conduct and the seriousness of his crime." (ECF No. 54 at 12).

Counsel notes in his affidavit that he is familiar with arguing for a variance in cases involving possession or receipt of child pornography, but that Defendant's case also included the more serious charge of producing child pornography.  (ECF No. 68-3 at 1–2).  More significantly, counsel noted that the defense strategy, as agreed by Defendant, was to avoid state prosecution on charges arising out of the same conduct. After Defendant entered his plea in this case, Defendant was arrested on August 14, 2012 in Santa Rosa County in Case No. 2012-CF-1187 on a twenty-one count information charging him with "principal to capital sexual battery" in violation of § 794.011(2)(a), Florida Statutes.  This crime is a felony punishable by life in prison without the possibility of parole for twenty-five years.  (ECF No. 68-3 at 2).  In light of Defendant's almost certain conviction of the state charges, and Defendant's age and medical condition, the defense hoped that if Defendant received a federal sentence of sufficient length, the Santa Rosa County prosecutor's office would dismiss the state charges against Defendant.   (ECF No. 68-3 at 2).  The benefit to Defendant would be that he could serve his term of incarceration in a federal, rather than state, facility.

At sentencing, counsel noted that the state might not pursue charges if the sentence in Defendant's federal case was "substantial enough."  (ECF No. 60 at 6). Counsel therefore asked the court for "some variance," noting that he had never had a case where he had been placed in a position where he was not asking for a variance down to the very minimum.  (ECF No. 60 at 11).  Counsel noted that his client understood he was going to spend the rest of his life in federal or state prison, and the preference was that Defendant serve his time in federal prison where he could get better medical care for his myriad health issues.  (ECF No. 60 at 11).  Counsel stated that he also had filed a motion to revoke pretrial release, in an attempt to place primary jurisdiction back in the federal court, such that any sentence imposed would first be served in federal custody.  (ECF No. 60 at 11).[3]  Finally, with regard to Defendant's sentence, the defense requested that, if the state proceeded on its charges against Defendant, that Defendant's federal sentence run concurrently with any state sentence imposed.  (ECF No. 60 at 14).

The defense request for a concurrent sentence was granted, and the district court specifically directed that the sentences in this case should run concurrent with

---

[3]Defendant voiced no objections to this "strategy" during his allocution.  Counsel notes in his affidavit that Defendant had approved the strategy during pre-sentencing discussions, as witnessed by Attorney Chris Janes, and Forensic Computer Consultant Chris Green.  (ECF No. 68-3 at 3, n.2).

Case Nos. 3:12cr28/RV/CJK; 3:13cv500/RV/CJK

any sentence to be imposed by the Circuit Court of Santa Rosa County. (ECF No. 60 at 30). The court stated that its sentence, which was below the midpoint of the guidelines range, took into account Defendant's age and a number of mitigating factors. It further stated that it had considered all the 3553(a) factors, that it had taken into account the advisory nature of the Sentencing Guidelines, and it concluded that under the circumstances of this case, the sentence was both reasonable and sufficient to comply with the statutory purposes. (ECF No. 60 at 30-31).

Defense counsel's affidavit reflects that after sentencing in this case counsel continued to negotiate in Defendant's behalf with the Office of the State Attorney regarding the state charges. (ECF No. 68-3 at 3-4). Counsel rejected the state's offer for a thirty year state sentence to run concurrent with the federal sentence. Ultimately, the state charges were dropped. (ECF No. 68-3 at 3-4).

The sentence Defendant received was not illegal. Defendant has pointed to nothing in the record that would indicate that his sentencing court would have been inclined to grant a variance, even if counsel had made such a request. Defendant now claims he "only agreed to asking for 20 to 25 years, which would invariably involve a departure from the guideline range or a guideline sentence omitting some of the enhancements. . ." (ECF No. 77 at 9). Nevertheless, based on the unrebutted affidavit

of defense counsel, had Defendant received such a federal sentence, the state prosecution would likely have proceeded and Defendant would have been thereby exposed to a mandatory sentence in excess of the sentence imposed in this case. (ECF No. 68-3 at 3-4).  He is not entitled to relief.

Ground Two

Defendant next claims that counsel was constitutionally ineffective because he allowed his client to stipulate to a general definition of conduct as described in 18 U.S.C. § 2256, which exposed him to unproven and uncharged conduct and a guidelines enhancement pursuant to § 2G2.1(b)(4).

The agreed statement of facts set forth that Defendant "did knowingly and intentionally use, persuade, induce, entice or coerce A.L., a minor, to engage in sexually explicit conduct . . . as defined in Title 18, United States Code, Section 2256" and that such photographs were "saved and/or stored on a PNY memory card and/or a SanDisk memory card."  (ECF No. 27 at 1-2).  Title 18 U.S.C. § 2256(2)(B) provides that "sexually explicit conduct" includes graphic or lascivious simulated conduct involving bestiality, masturbation or sadistic or masochistic abuse, and graphic or simulated lascivious exhibition of the genitals or pubic area of any person. Defendant now asserts that by stipulating to the general definition of "sexually

explicit conduct" he was admitting to the unproven and uncharged sadistic or masochistic conduct without ever having seen the picture or pictures that allegedly portrayed such conduct.

Defendant's base offense level was determined through grouping.  In this case, the guideline for Count 1[4] (§ 2G2.1) resulted in the highest offense level and was thus used to determine the advisory guideline imprisonment range.  *See* U.S.S.G. § 2G2.2(c).  Section 2G2.1 applies to offenses involving sexual exploitation of a minor by production of sexually explicit visual or printed material; or involving a custodian permitting a minor to engage in sexually explicit conduct.  Subsection 2G2.1(b)(4) provides that if the offense conduct involves material that portrays sadistic or masochistic conduct or other depictions of violence, a four level increase is appropriate.

In this case, the PSR reflects that eight year old A.L. was photographed as Defendant digitally penetrated A.L's anus, and that A.L. was also photographed inserting an anal sex toy into A.L's own anus.  (ECF No. 41, PSR ¶¶ 30, 33).  Defendant claims that he has always disputed the Government's characterization of the photos of A.L.  However, there was no objection to these facts as set forth in the

---

[4]The PSR's reference to Count two appears to be a typographical error.  (*See* ECF No. 41, PSR ¶ 52)

Case Nos. 3:12cr28/RV/CJK; 3:13cv500/RV/CJK

PSR.  As such, they are deemed admitted.  *See United States v. Shelton*, 400 F.3d 1325, 1329-30 (11th Cir. 2005) (holding that when a defendant fails to object to a fact contained in the PSI or in the government proffer at the plea colloquy, the defendant is deemed to have admitted the fact, which may then be used to enhance the sentence).

The Eleventh Circuit has held that the adjustment for portrayal of sadistic conduct "is warranted when cases involve images displaying an adult male vaginally or anally penetrating a young child."  *United States v. Hall*, 312 F.3d 1250, 1261 (11th Cir. 2002) (*citing United States v. Bender*, 290 F.3d 1279, 1286-87 (11th Cir. 2002) and *United States v. Caro*, 309 F.3d 1348 (11th Cir. 2002)).  The Government is not required to provide expert testimony to prove that the images involved pain to the child victim, because the penetration would have been painful.  *Id*.  The *Hall* court cited "prepubescent girls being anally and vaginally penetrated by use of foreign objects" as one example of sadistic conduct.  *Hall*, 312 F.3d at 1262 (*citing Caro*); *United States v. Diaz*, 368 F.3d 991 (11th Cir. 2004) (*citing Hall* for proposition that image showing anal penetration by foreign object is sadistic); *United States v. Quinn*, 257 F. App'x 864, 867 (6th Cir. 2007) (*citing Hall*).  Common sense would dictate

that, for a eight year old girl, insertion of a foreign object designed for use by adults would be painful.

The facts as set forth in the PSR support the application of the enhancement.[5] Any objection thereto would have opened the door for the Government to introduce the photos in question into evidence and make additional argument based upon the photographs.  As such, Defendant has not established that he was prejudiced by his stipulation to a general definition of conduct, and he is not entitled to relief.

Ground Three

In his third ground for relief, Defendant asserts that counsel was constitutionally ineffective because he failed to allow his client to view the pictures used by the Government at sentencing.  Defendant asserts in his affidavit that upon his specific request, counsel told him that the Government would not permit him to view the pictures.

Counsel states in his affidavit that he told Defendant he had the right to view the photographs (that he admitted to taking), but that Defendant was adamant that he

---

[5]Counsel stated in his affidavit that Defendant admitted to him that Defendant had penetrated the minor child.  (ECF No. 68-3 at 4).  Without denying the truth of counsel's statement, Defendant asserts that counsel should not have disclosed Defendant's admissions to counsel  because this issue was not raised by Defendant's § 2255 motion.  (ECF No. 77 at 6).  In fact, the admission is relevant to the issue of prejudice, because such an admission supports the application of the enhancement.

did not want to look at the photos, and that at no time did counsel tell Defendant that

the Government would not allow him to view the photographs.  (ECF No. 68-3 at 4,

5).   Again, counsel states that there were two witnesses to Defendant's refusal to

look at the photos.  (ECF No. 68-3 at 4, and n.5).  Counsel notes that perhaps

Defendant was confused in that counsel did tell Defendant that he could not bring the

photos into the jail.  Defendant claims this is false, and reiterates that he asked to see

the photographs because he believed he did not do the acts law enforcement said the

pictures illustrate.  (ECF No. 77 at 9).   Still, he fails to establish how counsel's

alleged failure to allow him to look at the photos resulted in prejudice.  As noted

above, any objection to any of the specific guideline adjustments would have opened

the door for the Government to introduce prejudicial evidence and make argument

thereon.

<u>Ground Four</u>

Defendant last claims that counsel failed to secure medical evidence to

disprove the Government's allegations of sadistic and masochistic abuse.  Defendant

notes that the only evidence offered to confirm the sadistic or masochistic sexual

activity was Special Agent Henych's "interpretation" of the photographs.  There was

no testimony from the victim or any medical evidence presented by the prosecution.

Case Nos. 3:12cr28/RV/CJK; 3:13cv500/RV/CJK

Defendant further asserts that A.L. underwent psychological counseling and medical testing, which found neither medical evidence of intrusion nor psychological effects of the events, and that this established that "the events were not traumatic." (ECF No. 77 at 4).

Defendant's suggestion that expert medical testimony is required to prove sadistic conduct is contradicted by controlling case law.  *See Hall*, 312 F.3d at 1261. Moreover, an objection would have opened the door for the introduction of additional evidence and could have factored into the court's perception of Defendant's acceptance of responsibility.  Defendant has not established that counsel was constitutionally ineffective for failing to present such evidence.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its entirety.

Case Nos. 3:12cr28/RV/CJK; 3:13cv500/RV/CJK

### Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (ECF No. 50) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 13th day of January, 2016.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**